**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

HARVEY C. LEE,
Plaintiff,

v.

LYDELL SHERRER, SUE ROERTY, JAMES F. BARBO, GERALD T. KENNEDY, RICHARD CEVASCO, LORETTA HATEZ, and DEVON BROWN in their individual capacities, and THE STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON,
Defendants.

Civ. Action No. 06-2716 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

## I. INTRODUCTION

This matter comes before the Court on defendants' motion for summary judgment. The action involves claims brought by Harvey C. Lee ("Lee"), a formerly incarcerated individual alleging mistreatment based upon his disabled status while in custody of the State of New Jersey and its agencies (collectively, "the State"). Lee is a paraplegic and is permanently confined to a wheelchair.

The claims in this matter are asserted under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), Rehabilitation Act, and the New Jersey Law Against Discrimination ("NJ LAD"). Claims under § 1983 are asserted against defendants Lydell Sherrer (Warden of Northern State Prison), Sue Roerty (Director of the Community Release Program at NSP), James F. Barbo (Director of the Department of Corrections), Gerald T. Kennedy (Assistant Director of

the Department of Corrections), Richard Cevasco (Assistant Director of the Department of Corrections), Loretta Hatez (Supervising Project Manager of the Department of Corrections), and Devon Brown (Commissioner of the Department of Corrections), all in their individual capacities. Claims under the ADA and Rehabilitation Act are asserted against the State of New Jersey, the New Jersey Department of Corrections ("NJDOC") and Northern State Prison ("NSP"). Claims under the NJLAD are asserted against the State of New Jersey, the NJDOC, NSP, as well as individual defendants Sherrer, Roerty, Barbo, Kennedy, Cevasco, Hatez, and Brown.

## II. FACTUAL BACKGROUND

Lee, a wheelchair-bound paraplegic, was sentenced on October 17, 2001 to the custody of the NJDOC for a term of ten years with 5 years parole ineligibility as a result of drug-related offenses. (Defs.' 56.1 St. ¶ 1 (stipulated); Compl. ¶ 5; Decl. of S. Campbell (Campbell Decl.), Exh. D at DOC1-DOC2.) On November 1, 2001, Lee was transferred to the Central Reception and Assignment Facility, after which he was transferred to the South Woods State Prison ("SWSP") on November 9, 2001. (Defs.' 56.1 St. ¶ 2 (stipulated).) On September 3, 2002, Lee was transferred to Northern State Prison ("NSP") pursuant to his own request. (Defs.' 56.1 St. ¶ 3 (stipulated).) Almost two months later, on October 22, 2002, the State denied Lee's request to be transferred back to SWSP. (Campbell Decl., Exh. D at DOC7.)

While incarcerated at NSP, Lee was housed in the C-100-East housing unit, during which time he maintains that he largely had no access to a shower seat, was allowed on occasion to borrow another inmate's shower seat, and was only briefly allowed use of the shower seat on C-100-West, located on a different cell block, which required him to travel across the prison in a towel. (Pl's. 56.1 St. ¶¶ 5,7; Defs.' Exh. A, Lee Dep. 56:24-57:11.) Lee recounts that he

"continually complained about the problem to no avail" and that "[t]aking showers in the wheelchair he used all day created damage and discomfort as he was forced to sit in a wet seat all day." (Pl's. 56.1 St. ¶ 7.)

During his time at NSP, Lee was granted "gang minimum custody status" on September 3, 2003, and "full minimum custody status" on October 1, 2003. (Defs.' 56.1 St. ¶¶ 10-11 (stipulated).) Lee's housing assignment remained C-100-East. (Defs.' 56.1 St. ¶ 12; Pl's. 56.1 St. ¶¶ 10-12.) Lee states that "defendants' failure to accommodate his disability" caused him "less freedom despite his earned status for minimum security." (Pl's. 56.1 St. ¶ 12; Lee Dep. 58:22-60:3; 63:17-65:5; 68:11-71:17; 78:22-84:14; 98:24-103:25.)

On August 30, 2004, Lee was transferred to Talbot Hall (Defs.' 56.1 St. ¶ 13 (stipulated)), an assessment center aimed at better equipping inmates for release. (Defs.' 56.1 St. ¶ 14.) Typically, the 90-day stay at Talbot Hall leads to assignment of inmates to a halfway house. (Defs.' 56.1 St. ¶ 15.) Lee asserts that Talbot Hall was not wheelchair-accessible, pointing to his March 7, 2005 ADA grievance. (Defs.' 56.1 St. ¶ 18; Pl's. 56.1 St. ¶ 18; Exh. K, ADA Grievance, DOC1034-1035.) The March 2005 ADA grievance also states that Talbot Hall failed to facilitate ongoing accommodation after Lee's departure insofar as Talbot Hall allegedly did not forward his medical records to his next residence. (Exh. K, ADA Grievance, DOC1034-1035.)

Lee was transferred to another facility, Harbor House, on December 30, 2004. (Defs.' 56.1 St. ¶¶ 19-20 (stipulated).) Defendants say that when plaintiff arrived at Harbor House, "its staff acknowledged receipt of his file and was aware of plaintiff's daily medication needs and paralysis." (Defs.' 56.1 St. ¶ 24.) Lee denies this assertion, relying on defendants' responses to Lee's request for admissions, in which Lee claims defendants admitted they "were not made

aware of plaintiffs' disabilities and need for regular insulin shots at the time of his admission to their facility." (Pl's. 56.1 St. ¶ 24.) Harbor House's request for admissions shows that Harbor House admitted it was *not* "able to administer insulin shots to plaintiff during his residency" at that facility, that Harbor House was *not* "made aware" of Lee's "disabilities at the time of [Lee's] admission as a resident," and that the facility was *not* "made aware of [Lee's] need for regular insulin shots at the time" of his admission. (Exh. H, ¶¶ 13, 17, 18.) Lee's ADA grievance form concerning Harbor House, dated March 7, 2005, grieves that he was unable to access toilets with his wheelchair due to inadequate clearance in lavatories, faced corridors so narrow that other inmates would need to stand single file for him to pass, and was excluded from inmate outings to shopping malls and discount retail outlets. (Pl's. Exh. K, DOC1034-35.) According to Lee's grievance form, Lee relied on fellow Harbor House inmates to lift him onto and off of the toilet, a predicament that sometimes left him stranded and crying out loudly for assistance. (Id.)

After his stay at Harbor House, Lee was returned to NSP. The record reflects that the parties dispute the reasons for and circumstances surrounding Lee's transfer from Harbor House to NSP. According to Lee, he was "forced to return to [NSP] due to the failure [sic] defendants to accommodate his disabilities, and their inability to administer insulin shots." (Pl's. 56.1 St., ¶¶ 25, 26.) In support of his account, Lee points to an April 13, 2005 letter from Kennedy to Sherrer regarding the ADA grievance in which Kennedy stated that Lee was being returned to NSP "because of his medical concerns." (Pl's. 56.1 St., ¶¶ 25, 26 (citing Pl's. Exh. K, DOC1027-1030, DOC1034-35, and State Parole Board Case Summary).)

On July 5, 2005, Lee was released from NSP on parole. (Defs.' 56.1 St. ¶ 30 (stipulated).) After being returned to custody for parole violations in May 2006, Lee served

more time at SWSP until January 2007, when he was again paroled. (Defs.' 56.1 St. ¶¶ 31-33 (stipulated).) Lee's maximum sentence expired April 18, 2007. (Defs.' 56.1 St. ¶ 34 (stipulated).)

While Lee was still incarcerated at SWSP, he filed this action against the State of New Jersey, the NJDOC, NSP, Sherrer, Roerty, Barbo, Kennedy, Cevasco, Hatez, Brown, as well as Tom Bredy, Harbor House, Edmond Chicci, and the Middlesex County Correction Center. The NJDOC, NSP, Sherrer, Roerty, Barbo, Kennedy, Cevasco, Hatez, and Brown were granted extensions of time to answer. All defendants filed answers to the complaint. On August 7, 2007, plaintiff added CFG Medical Services ("CFG"), an operator of supervised residential facilities, to the suit by way of amended complaint.

After discovery closed, the Court entered a stipulation and order of dismissal on February 15, 2008 dismissing Harbor House and Tom Bredy with prejudice. On March 27, 2008, after the Final Pretrial Order was filed, Lee voluntarily dismissed all § 1983 claims against the State of New Jersey, NJDOC, NSP, as well as Sherrer, Roerty, Barbo, Kennedy, Cevasco, Hatez, and Brown in their official capacities, and all ADA and Rehabilitation Act claims against Sherrer, Roerty, Barbo, Kennedy, Cevasco, Hatez, and Brown. On April 7, 2008 defendant CFG was dismissed by stipulation. Subsequent to the filing of the motions decided herein, on June 10, 2008 Middlesex County Adult Correctional Facility and Edmond Chicci were dismissed by stipulation.

## III. STANDARD OF REVIEW

Under Rule 56(c), summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). The Court is duty-bound to "view the facts in the light most favorable to the non-moving party and [must] draw all inferences in that party's favor." Gray v. York Newspapers, 957 F.2d 1070, 1080 (3d Cir. 1992). Summary judgment is inappropriate if there is evidence sufficient to allow a reasonable jury to return a verdict for the non-moving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), or if the factual dispute is one which might affect the outcome of the suit under the governing law . . . ." Id. The movant's burden, however, "may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Additionally, the non-movant "may not rest upon mere allegations or denials of the . . . pleading"; instead, the non-movant, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**IV. DISCUSSION**

Defendants argue that Lee's claims arising prior to June 16, 2004 are barred by the two-year statute of limitations; that prospective injunctive relief is mooted because Lee is no longer incarcerated; that Lee's claims for damages are barred by the Prison Litigation Reform Act ("PLRA"); that Lee's § 1983 claims are improperly based upon a theory of *respondeat superior*; that defendants did not exclude or deny Lee benefits or otherwise violate the ADA, § 504 of the Rehabilitation Act of 1978, or the New Jersey Law Against Discrimination; that defendants were not deliberately indifferent to Lee's medical needs; that NJDOC defendants are entitled to summary judgment because they did not treat Lee differently from other similarly-situated inmates; that Lee cannot establish a due process claim because the defendants did not infringe upon any protected liberty interest; and that all defendants are entitled to qualified immunity.

Lee opposes, arguing that the statutes of limitation do not foreclose his action inasmuch as the claims are part of a continuing violation; that injunctive relief is appropriate due to likelihood of re-incarceration; that the PLRA does not bar the claims; that his claims are not premised on *respondeat superior*; that discrimination is an issue for the trier of fact and not for summary judgment; that his Eighth Amendment claim is not limited to medical deliberate indifference; that his allegations establish violations of protected property interests; and that defendants do not enjoy qualified immunity.

*A. PLRA*

Defendants argue that Lee's claims for compensatory damages are barred by the PLRA, 42 U.S.C. § 1997e(h), because Lee has not suffered any prior physical injury. (Defs. Br. 13-14.) Because Lee was incarcerated at the time his complaint was filed, it is governed by the PLRA. 42 U.S.C. § 1997e(h). Generally, under the PLRA, a prisoner cannot recover damages for mental or emotional injury absent a showing of "prior physical injury." 42 U.S.C. § 1997e(e). Defendants argue they are entitled to summary judgment and Lee's claims are barred by the PLRA in that Lee does not allege, and cannot show, an actual physical injury. (Defs. Br. 13.)

Lee counters that his claims are not founded on "mere mental or emotional injury," but instead are based on the "loss of protected property interests under the Constitution." (Pl's. Opp'n Br. 26.). In support of Lee's position that his injuries are compensable in the absence of past physical harm, he cites, among other cases, Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003). In Mitchell, a *pro se* Pennsylvania state inmate sued, alleging constitutional violations under § 1983 for allegedly being framed with drug possession by a prison guard as retaliation. Id. at 526. The inmate in Mitchell was subjected to disciplinary custody in a cell smeared with feces and infested with flies. Id.

In Mitchell, the Third Circuit addressed the "physical injury" requirement under § 1997e(e), and made clear that "Section 1997e(e)'s requirement that a prisoner demonstrate physical injury before he can recover for mental or emotional injury applies only to claims for compensatory damages." Id. at 533. The Mitchell court further explained that "[c]laims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively" such that "regardless how we construe § 1997e(e)'s physical injury requirement, it *will not affect Mitchell's ability to seek nominal or punitive damages for violations of his constitutional rights*." Id. at 533 (emphasis added). In Lee's claims, which are asserted under § 1983, the ADA, and the NJ LAD, Lee "seeks money damages, declaratory relief, attorneys fees and costs and punitive damages," but does not specify that he seeks compensatory damages. (Am. Compl. § II.) Accordingly, like the Mitchell Court, this Court does not find any tension between § 1997e(e) and Lee's claims. Lee is free to pursue punitive damages and other money damages to the extent available under the law. Inasmuch as defendants' summary judgment motion is predicated on its § 1997e(e)-related arguments, it is denied.

*B. Plaintiff's Ability to Make Out a Prima Facie Case under the ADA, Rehabilitation Act, or NJLAD*

Defendants submit that Lee cannot make a *prima facie* showing to support a violation under the ADA, Rehabilitation Act, or NJLAD. Defendants correctly note that the ADA prohibits discrimination of disabled persons by public entities, 42 U.S.C. §§ 12131, et seq., and admit that Lee was a "'qualified individual with a disability' when he was incarcerated because he is confined to a wheelchair." (Pl's. Br. 18.); see also Penna. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212,213 (1998). To make out his case under Title II of the ADA, Lee must show that:

(1) he is a qualified individual with disability; (2) he was either excluded from participation in or denied benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of plaintiff's disability. 42 U.S.C. § 12132. Even conceding that Lee is a qualified individual, as defendants do, they nonetheless argue that he cannot make out a *prima facie* case of ADA discrimination "because he was not denied meaningful access to any service, program or activity by the State defendants." (Defs.' Br. 18.)

Lee argues that summary judgment is inappropriate on the ADA claims, particularly in light of factual issues surrounding Harbor House's degree of accommodation of Lee. As part of the NJDOC, events at Harbor House fall under that agency's purview, and Lee has cited applicable authority in the form of N.J.A.C. § 10:A.20:3(a)(2) that demonstrates NJDOC is responsible for conditions at such residences. Lee's has adduced evidence that could lead a reasonable fact-finder to conclude his disability was not accommodated, including Harbor House's inability to administer insulin shots, his difficulties with corridors and bathrooms too narrow to accommodate his wheelchair, and the distress of being forced to pull himself across urine and feces to reach the toilet. (Pl's. Opp'n Br. 39-41.) The apparent reasons supporting Lee's return from Harbor House to NSP—that the transfer was based on Lee's medical condition—also provide evidentiary support. In the same vein, the record taken in the best light for Lee indicates he was told that he would not get work releases and transfer to the minimum security custody unit for which he had qualified based on his disability. (Pl's. 56.1 St. ¶ 12.)

Lee has adduced sufficient evidence of instances of exclusion from programs and benefits such as housing reassignment for achieving "gang minimum custody status" and assignment to residential halfway houses, as well as showering privileges and medical care, all on the basis of

his disability. These constitute *prima facie* showings under Title II of the ADA, entitling Lee's case to go forward. The Court denies summary judgment on the claims under ADA, Rehabilitation Act, and NJ LAD on the basis that Lee has failed to present a *prima facie* case.

*C. Statute of Limitations Arguments*

Defendants assert that Lee's claims are barred by the applicable two-year statute of limitations. New Jersey's two-year limitations period for personal injury actions, N.J.S.A. § 2A:14-2, applies to all § 1983, ADA, and Rehabilitation Act claims accruing in New Jersey. Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989). Federal law governs the accrual of the federal claims. Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998). Defendants correctly note that generally, a claim accrues in a federal cause of action "as soon as a potential claimant either is aware, or should be aware, of the existence of and source of the injury that constitutes the legal wrong." (Defs.' Br. 9-10 (citing Oshiver v. Leving, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994)). Thus, "absent tolling," defendants argue, Lee's claims of which he had reasonable of knowledge prior to June 16, 2004 must be dismissed for being untimely under the law.

Defendants argue that Lee knew about his potential claims for the broken shower seat and excessively high water fountains at NSP as far back as October 2002, and that he knew in October 2003 that he was denied a transfer to minimum-security camps. Defendants urge that Lee "was clearly aware of the source of his claims regarding the shower seat and water fountains where he was housed at Northern *for a period of nearly four years prior* to filing the initial Complaint." (Defs.' Br. 10 (emphasis added).)

Lee argues that his claims are not untimely because they were of a continuing nature that extended well within the statutory temporal period. (Pl's. Opp'n Br. 18.) Lee contends that the

"continuing violation theory" permits him to file a claim out of time if he can demonstrate that a discriminatory action is part of an "ongoing practice or pattern of discrimination." See West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). In order to prevail under the continuing violation theory, Lee "must demonstrate that at least one act occurred within the filing period" and also "must establish that the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" Id. at 754-55. If Lee can establish the applicability of the continuing violation theory, "he may then offer evidence of, and recover for, the entire continuing violation." Id. at 755. The underlying reason, as noted by Lee, is that the purpose of statutes of limitation—the barring of stale claims—is not disserved where the continuing violation theory applies; by virtue of continuing into the permissible period, the claims are not stale. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 380 (1982).

As proof of the violations' continuing nature, Lee cites the fact that he filed grievances *after* June 2004 for the three violations defendants say are untimely. (Pl's. Opp'n Br. 20.) Specifically, Lee points to his July 2004 grievance regarding the shower seat (Pl's. Exh. B (DOC1045-46, 1048), his May 2005 grievance regarding the inaccessible water fountains (Pl's. Exh. E, DOC35), and his April 2005 grievance concerning his non-transfer to a minimum security camp. (Pl's. Exh. M, DOC32.) Lee's July 19, 2004 grievance letter illustrates the evolving character of Lee's shower-seat claim. The shower seat issue was not a static condition, but rather one that changed over time, as illustrated in the July 2004 complaint letter, where Lee said: "the Maintenance crew has always been reluctant to repair [the shower seat] when broken (last time took months)." (Pl's. Exh. B, DOC1045.) A review of the May 2005 complaint form indicates that Lee's difficulties with accessing water fountains in the gymnasium were experienced during recreation and religious services at the time of his making the complaint.

(Pl's. Exh. E, DOC38.) Lee's request was denied with little explanation, only stating that "[w]ater fountains can't be lowered." (Id.)

In Lee's April 18, 2005 grievance, he noted his "minimum security" designation, and complained that he should be sent to a minimum security camp. (Pl's. Exh. M, DOC32.) Further, Lee questioned why such a re-assignment was unavailable to him. The three post-June 2004 complaints documenting Lee's denial of (1) a reliable shower seat; (2) accessible water fountains; and (3) minimum security accommodations all suggest non-sporadic, continual, and actively injurious violations.

Three factors are used in our Circuit to determine if an otherwise untimely claim is actionable under the continuing violation theory: The first factor, subject matter, goes to whether the violations are of the same type; second, frequency, addresses whether the acts are recurring or more in the nature of isolated incidents; and third, the degree of permanence, deals with whether the act had a degree of permanence such that a plaintiff should have been aware of a possible claim and whether the violation would still exist even without an intent to discriminate. Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). Defendants' reply brief does not so much as mention the first two factors, and this Court believes Lee has no difficulty in satisfying them: the violations all involve denial of accessibility and parity to a wheelchair-bound inmate, and the acts were recurring because Lee continued to be in custody day after day during his incarceration.

Defendants focus on the third factor: degree of permanence. Defendants attempt to rebut the continuing violation theory on the basis that Lee's grievances have an element of permanence "such that they put plaintiff on notice of his duty to assert his rights." They rely on Foster v. Morris, 208 Fed. Appx. 174, 178 (3d Cir. 2006), where a prisoner alleged ADA violations for

lack of grab bars on his toilet and for a wheelchair-accessible shower during his several brief transfers to Franklin, a prison facility used for overnight stays due to court appearances. The Third Circuit observed that Foster was put on notice of the inaccessibility and violations at Franklin each time he was transferred there, indicating he should have asserted his rights earlier. Id. at 178.

Here, instead of intermittent transfers to a temporary overnight holding facility, Lee provides evidence of having been subjected to an evolving situation of an often-broken shower seat and blocked efforts to enjoy the minimum security privileges he had earned. This differs from Foster's situation in that the Franklin facility was not Foster's permanent assignment; Foster knew what to expect when he was sent to Franklin. Lee's evidence supports his claim that he was exposed to unacceptable permanent housing, about which he regularly filed internal grievances about broken showers, inaccessible water fountains, and the like. The give and take regarding his surroundings reflected in the record indicates that Lee's circumstances, unlike Foster's, were in flux. Accordingly, Lee's claims are not barred on timeliness grounds and summary judgment is denied on that basis.

*D. Respondeat Superior Under 42 U.S.C. § 1983*

Defendants argue that Lee's § 1983 claims against certain defendants in their individual capacities must be dismissed because they are based solely upon a theory of *respondeat superior*. It is fundamental that supervisory liability claims under 42 U.S.C. § 1983 cannot be predicated entirely upon *respondeat superior*. Polk County v. Dodson, 454 U.S. 312, 325 (1981). "A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)

(internal citations omitted). Further, "[a]llegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Id.

Lee has attached a number of grievance letters to his papers in opposition to defendants' motion that are addressed to individual defendants. Additionally, Lee has submitted letters establishing that Kennedy, Sherrer, and Barbo engaged in correspondence that reflects actual knowledge of Lee's grievances at NSP, including the broken shower seat and refusal of replacement shoes. (Exh. B, DOC1045-46.) In a letter dated October 6, 2004, Lee informed Kennedy of various broken parts on his wheelchair that had gone unrepaired. (Exh. D, DOC429.) That correspondence was later forwarded to Cevasco and Barbo, and was followed by a reply on November 10, 2004 from Barbo to Lee. (Exh. D, DOC430.) As the record shows, Lee provided notice to the NJDOC concerning the inaccessibly high water fountains. (Exh. E, DOC38.) In a January 20, 2005 letter, Lee wrote Commissioner Brown of the NJDOC concerning his grievances with Harbor House and other facilities, including inaccessiblity of toilets, narrow corridors through which his wheelchair could not pass, and the inability of facility staff to administer insulin. (Exh. J.) Defendant Hatez, whose answers to interrogatories were offered in support of defendants' moving brief, served as Supervising Program Support Specialist. Hatez's answers to interrogatories demonstrate her personal knowledge of Lee's experiences related to his claims in this action. (Defs.' Exh. C.)

With regard to his NSP grievances, Lee's evidence and reasonable inferences drawn therefrom establish that he complained to the maintenance department and others about the broken shower seat and wrote letters to the State Ombudsman "several times." (Pl's. 56.1 St. ¶ 7; Defs.' Exh. B, Lee Dep. 60:20-63:16.) The record contains letters Lee wrote to defendant Kennedy regarding his requests for a shower seat and denial of boots on July 8 and 19, 2004.

(Exh. B, DOC1045-46, DOC1048.) Lee's July 19, 2004 letter to Kennedy indicates in a "cc" line that he contemporaneously sent Sherrer a copy. (Exh. B, DOC1045-46.) An "Administrative Remedy Form" dated July 19, 2004 regarding Lee's request for disability-related accommodations is directed to Sherrer and copied to Kennedy. (Exh. B, DOC1048.)

Because Lee has adduced evidence that supports his claims that defendants in a supervisory position had personal knowledge of his denial of a working shower seat, replacement boots, and parts for his wheelchair at NSP, as well as of wheelchair-inaccessible conditions at Harbor House, the Court rejects defendants' arguments that Lee has failed to meet the evidentiary requirements of §1983 and denies summary judgment on that basis.

*E. Qualified Immunity*

In their papers, defendants also assert qualified immunity, maintaining that their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Saucier v. Katz, 533 U.S. 194 (2001). In addressing assertions of qualified immunity, courts are required to answer a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Scott v. Harris, 127 S. Ct. 1769, 1772 (2007) (internal citation and quotations omitted). Subsequently, "[i]f, and only if, the court finds a violation of a constitutional right," the next step is to determine "whether the right was clearly established in light of the specific context of the case." Id. Lee has adduced sufficient evidence of defendants' failure to accommodate his disability and provide humane conditions, which includes evidence regarding the unavailability of a functioning wheelchair shower seat at NSP from September 2002 to August 2004; Lee's return to NSP from Talbot Hall for unclear reasons; NJDOC's refusal to provide Lee with boots; denial of Lee's meaningful

participation in a halfway house and minimum security camp due to his disability; the conflicting reasons for Lee's return from Harbor House to NSP as provided in Hatez's responses to interrogatories and the April 13 correspondence between Kennedy and Barbo; denial of wheelchair-accessible lavatories at NJDOC facilities (resulting in Lee's exposure to excrement and urine on the floor); as well as NJDOC's failure to accommodate Lee's medical needs at Harbor House. Some of this evidence, as indicated, supports a *prima facie* case; some is sharply disputed. Quite clearly, this is not a record upon which a Court can determine qualified immunity for any or all of the defendants at the summary judgment stage. Curley v. Klem, 499 F.3d 199, 208 (3d Cir. 2007). Defendants' motion for summary judgment on that basis is denied.

*F. Injunctive Relief*

Defendants correctly note that Lee is no longer incarcerated and has served his maximum sentence. As a first principle, this Court's powers are limited to the resolution of "cases and controversies." U.S. Const. Art. III, § 2, cl. 1. Federal courts are not empowered to decide moot questions. North Carolina v. Rice, 404 U.S. 244, 246 (1971). An actual controversy must exist at all stages of proceedings or the case may be considered moot. N.J. Tpk. Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 216 (3d Cir. 2003) (internal quotation omitted).

Lee has served his full sentence, which effectively moots any proceedings for purposes of obtaining injunctive relief unless Lee takes the position that he expects to be incarcerated again. See Feliz v. Kintock Group, No. 07-2805, 2008 U.S. App. LEXIS 23792, *11 (3d Cir. Oct. 30, 2008) (noting that former inmate's "claims for injunctive relief were, of course, mooted by his

release from imprisonment"); Falciglia v. Erie County Prison, 279 Fed. Appx. 138, 140 (3d Cir. 2008) (stating that "[b]ecause [the plaintiff] is no longer housed at the Erie County Prison, his request for injunctive relief is moot"). At a status conference, Lee's attorney admitted the dicey nature of arguing for injunctive relief on the basis that Lee might return.

Lee has adduced evidence of discrimination in places he would have to commit crimes to experience again. But the very restrictions imposed by incarceration call out for injunctive relief should Lee prevail on the merits. At this summary judgment stage, the Court is not persuaded that it needs to, or should, dismiss the claims for injunctive relief and denies defendants' motion.

## V. CONCLUSION

Defendants' motion for summary judgment is **denied**. An appropriate order will be entered.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Dated: March 31, 2009